UNSEALED
PER ARREST
10-14-15

Sealed
Public and unofficial staff access to this instrument are prohibited by court order.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

United States District Court
Southern District of Texas
FILED

JAN 1 4 2014

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 14 CR 015 |
| v. | : | |
| Chiranun THANAKIT LE, | : | |
|    a.k.a. Chiranun THANAKIT, | : | |
|    a.k.a. Sue LE, | : | **FILED UNDER SEAL** |
|    a.k.a. Chiranun T. LE, | : | |
|    a.k.a. Sunun HIRANSOMBOON, | : | |
| Tul ROBROO, | : | |
|    a.k.a Tul ROBRHOO, | : | |
|                Defendants | : | |

## INDICTMENT

The Grand Jury charges that:

### INTRODUCTION

1. Fully assembled firearms (firearms) and non-serialized firearm parts (firearm parts) are readily available for purchase in the United States through regular retail channels from Federal Firearms Licensees (FFL), a business licensed under Chapter 44 of Title 18, United States Code, to engage in the business of dealing in firearms.
2. A retail purchaser of a firearm must fill out Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Form 4473, Firearms Transaction Record, listing the buyer's true name, current residential address, and other identifying information. The information on the Form 4473 makes it possible to trace a firearm back to its retail purchaser. FFLs are required by Chapter 44 of Title 18, United State Code, to maintain these forms in their records.
3. A retail purchaser of certain firearm parts is not required to execute a Form 4473 nor provide personal identifying information to complete the purchase.
4. Firearms and certain firearm parts are classified as defense articles pursuant to the United States Munitions List and International Traffic in Arms Regulations under Title 22, Code of Federal Regulations, Part 121.

5. In order to legally export or transfer firearms or certain firearm parts, defined as "defense articles," outside the United States, an individual is required to register with and obtain an export license from the United States Department of State, Directorate of Defense Trade Controls, which administers and regulates the export of "defense articles."
6. In order to avoid detection, firearm traffickers commonly purchase firearm parts, such as, firearm barrels, firearm barrel assemblies, bolt carrier assemblies, rifle grips and ammunition magazines, rather than completely assembled firearms. At all times relevant to this indictment, firearm barrels, firearm barrel assemblies, bolt carrier assemblies, rifle grips and ammunition magazines were and are classified as defense articles of a nature described on the United States Munitions List and subject to export restrictions and controls.
7. In order to circumvent export restrictions and controls, firearm traffickers commonly attempt to conceal defense articles by misidentifying items being exported or transferred to another country.
8. At all times relevant to this indictment, Chiranun THANAKIT LE, a.k.a. Chiranun THANAKIT, a.k.a. Sue LE, a.k.a. Chiranun T. LE, a.k.a. Sunun HIRANSOMBOON, (THANAKIT LE) and Tul ROBROO, a.k.a Tul ROBRHOO (ROBROO) are not and have never been registered, licensed or otherwise authorized to engage in the export of "defense articles."

## COUNT ONE

9. OBJECT OF THE CONSPIRACY

Beginning October 1, 2008 and continuing up to and including December 1, 2011, within the Southern District of Texas, and elsewhere, defendants

Chiranun THANAKIT LE,
a.k.a. Chiranun THANAKIT,
a.k.a. Sue LE,
a.k.a. Chiranun T. LE,
a.k.a. Sunun Hiransomboon,
and
Tul ROBROO,
a.k.a Tul ROBRHOO

did knowingly, intentionally, and willfully agree and conspire with each other and other persons known and unknown to the grand jury to:

    a. export from the United States defense articles on the United States Munitions List without first obtaining the required license and written approval from the Department of State, Directorate of Defense Trade Controls; in violation of Title 22, United States Code, Sections 2778(b)(2) and (c), and Title 22, Code of Federal Regulations, Section 127.1

    b. receive, buy, conceal and facilitate the transportation of merchandise, articles, and objects, prior to exportation, knowing the same to be intended for exportation contrary to laws and regulations of the United States; in violation of Title 18, United States Code, Section 554(a).

10. MANNER AND MEANS

The objects of the conspiracy were to be accomplished, in substance, as follows:

    a. Defendants THANAKIT LE and ROBROO would and did use the internet to conduct purchases and acquire defense articles of a nature listed on the United States Munitions List, Title 22, Code of Federal Regulations, Subchapter M, Part 121.1, Category I.

    b. Defendant THANAKIT LE would and did receive defense articles at her residence.

    c. Defendant THANAKIT LE would and did buy, receive, conceal and facilitate the transportation of merchandise, prior to exportation, knowing the same merchandise to be intended for exportation contrary to United States law.

    d. Defendant THANAKIT LE would and did consolidate, repackage, mislabel and export and attempt to export defense articles from the United States to Thailand, without obtaining the required license or approval from the United States Department of State, Directorate of Defense Trade Controls, in violation of United States laws and regulations.

    e. Defendant ROBROO would and did transmit reimbursement payments via international wire transfer to the bank accounts of Defendant THANAKIT LE.

    f. Defendant THANAKIT LE would and did mislabel and export at least one hundred and fifty (150) parcels that were mailed to or attempted to be mailed to Thailand.

    g. Defendants THANAKIT LE and ROBROO would and did purchase and acquire approximately $700,000.00 USD of firearm parts that included "defense articles."

11. OVERT ACTS

In furtherance of the conspiracy and to effect and accomplish the objects thereof, the following overt acts, among others, were committed within the Southern District of Texas and elsewhere:

1. In January, 2011, Defendant THANAKIT LE received wire transfer deposits of at least $34,000.00 USD into her bank account from Defendant ROBROO in Thailand.
2. In January, 2011, Defendant THANAKIT LE received at least eight (8) parcels containing firearm parts from retail firearm parts distributors and caused at least $34,070.80 USD to be transferred from her bank account(s) to retail distributors as payment for firearm parts.
3. In January, 2011, Defendant THANAKIT LE exported at least twenty-six (26) parcels from the United States to Thailand via the United States Postal Service, and

caused at least $1,573.03 USD to be transferred from her bank account(s) to the United States Postal Service as payment for mail services.

4. In February, 2011, Defendant THANAKIT LE received wire transfer deposits of at least $34,500.00 USD into her bank account(s) from Defendant ROBROO in Thailand.
5. In February, 2011, Defendant ROBROO caused at least $5,849.17 USD to be transferred from his credit account(s) to retail distributors as payment for firearm parts.
6. In February, 2011, Defendant THANAKIT LE received at least thirteen (13) parcels containing firearm parts from retail distributors and caused at least $15,000.00 USD to be transferred from her bank account(s) to retail distributors as payment for firearm parts.
7. In February, 2011, Defendant THANAKIT LE exported at least seventeen (17) parcels from the United States to Thailand via the United States Postal Service, and caused at least $1,552.50 USD to be transferred from her bank account(s) to the United States Postal Service as payment for mail services.
8. In March, 2011, Defendant THANAKIT LE received wire transfer deposits of at least $4,000.00 USD into her bank account(s) from Defendant ROBROO in Thailand.
9. In March, 2011, Defendant THANAKIT LE received at least three (3) parcels containing firearm parts from retail distributors, and caused at least $3,915.68 USD to be transferred from her bank account(s) to retail distributors as payment for firearm parts.
10. In March, 2011, Defendant ROBROO caused at least $2,868.91 USD to be transferred from his credit account to retail distributors as payment for firearm parts.
11. In March, 2011, Defendant THANAKIT LE exported at least ten (10) parcels from the United States to Thailand via the United States Postal Service, and caused at least $3,301.12 USD to be transferred from her bank account(s) to the United States Postal Service as payment for mail services.
12. In April, 2011, Defendant THANAKIT LE received wire transfer deposits of at least $2,000.00 USD into her bank account from Defendant ROBROO in Thailand.
13. In April, 2011, Defendant THANAKIT LE exported at least three (3) parcels from the United States to Thailand via the United States Postal Service, and caused at least $814.24 USD to be transferred from her bank account(s) to the United States Postal Service as payment for mail services.
14. In April, 2011, Defendant THANAKIT LE caused at least $909.88 USD to be transferred from her bank account(s) to a retail distributor as payment firearm parts.
15. In May, 2011, Defendant THANAKIT LE received wire transfer deposits of at least $5,000.00 USD into her bank account from Defendant ROBROO in Thailand.

16. In May, 2011, Defendant THANAKIT LE received at least two (2) parcels containing firearm parts from retail distributors and caused at least $2,396.33 USD to be transferred from her bank account(s) to retail distributors as payment for firearm parts.
17. In May, 2011, Defendant THANAKIT LE exported at least eight (8) parcels from the United States to Thailand via the United States Postal Service, and caused at least $1,046.95 USD to be transferred from her bank account(s) to the United States Postal Service as payment for mail services.
18. In June, 2011, Defendant THANAKIT LE received wire transfer deposits of at least $28,500.00 USD into her bank account(s) from Defendant ROBROO in Thailand.
19. In June, 2011, Defendant THANAKIT LE received at least two (2) parcels containing firearm parts from retail distributors, and caused at least $14,597.84 USD to be transferred from her bank account(s) to retail distributors as payment for firearm parts.
20. In June, 2011, Defendant THANAKIT LE exported at least ten (10) parcels from the United States to Thailand via the United States Postal Service, and caused at least $2,899.13 USD to be transferred from her bank account(s) to the United States Postal Service as payment for mail services.
21. In July, 2011, Defendant THANAKIT LE received wire transfer deposits of at least $25,500.00 USD into her bank account(s) from "Chiraphong Pumsuwan" in Thailand.
22. In July, 2011, Defendant THANAKIT LE received at least four (4) parcels containing firearm parts from retail firearm parts distributors, and caused at least $10,882.42 USD to be transferred from her bank account(s) to retail distributors as payment for firearm parts.
23. In July, 2011, Defendant THANAKIT LE exported at least ten (10) parcels from the United States to Thailand via the United States Postal Service, and caused at least $2,682.79 USD to be transferred to the United States Postal Service as payment for mail services.
24. On or about July 28, 2011, Defendant THANAKIT LE caused at least $374.75 USD to be transferred to the United States Postal Service as payment for mail services, in furtherance of unlawfully exporting at least one (1) parcel that contained defense articles and firearm parts, but mislabeled as "used motorcycle part," from the United States via the United States Postal Service.
25. On or about July 28, 2011, Defendant THANAKIT LE did unlawfully export at least one (1) parcel that contained defense articles and firearm parts, but mislabeled as "used motorcycle part," from the United States via the United States Postal Service.
26. In August, 2011, Defendant THANAKIT LE received wire transfer deposits of at least $38,000.00 USD into her bank account(s) from Defendant ROBROO in Thailand.

27. On or about August 4, 2011, Defendant THANAKIT LE negotiated one (1) personal check made payable to "Cash" in the amount of $3,500.00 USD. The memo line indicated the funds were for the benefit of Defendant ROBROO.
28. In August, 2011, Defendant THANAKIT LE received at least two (2) parcels containing firearm parts from retail distributors and caused at least $23,108.93 USD to be transferred from her bank account(s) to retail distributors as payment for firearm parts.
29. In August, 2011, Defendant THANAKIT LE exported at least twelve (12) parcels from the United States to Thailand via the United States Postal Service, and caused at least $3,095.00 USD to be transferred from her bank account(s) to the United States Postal Service as payment for mail services.
30. In September, 2011, Defendant THANAKIT LE received wire transfer deposits of at least $19,000.00 USD into her bank account(s) from Defendant ROBROO in Thailand.
31. In September, 2011, Defendant ROBROO caused at least $9,896.00 USD to be transferred from his credit account to a retail distributor as payment for firearm parts.
32. In September, 2011, Defendant THANAKIT LE received at least seven (7) parcels containing defense articles and firearm parts from retail distributors, and caused at least $11,649.37 USD to be transferred from her bank account(s) to retail distributors as payment for defense articles and firearm parts.
33. In September, 2011, Defendant THANAKIT LE exported at least nine (9) parcels from the United States to Thailand via the United States Postal Service, and caused at least $2,073.40 USD to be transferred to the United States Postal Service as payment for mail services.
34. On or about September 23, 2011, Defendant THANAKIT LE did cause at least $705.50 USD to be transferred to the United States Postal Service in furtherance of unlawfully exporting (2) parcels containing defense articles and firearm parts, but mislabeled as "used motorcycle part" and "used auto part," from the United States to Thailand via the United States Postal Service.
35. On or about September 23, 2011, Defendant THANAKIT LE did attempted to unlawfully export two (2) parcels that contained defense articles and firearm parts, but mislabeled as "used motorcycle part" and "used auto part," from the United States to Thailand via the United States Postal Service.
36. In October, 2011, Defendant THANAKIT LE received wire transfer deposits of at least $5,000.00 USD into her bank account(s) from Defendant ROBRHOO in Thailand.
37. In October, 2011, Defendant THANAKIT LE received at least one (1) parcel containing defense articles and firearm parts from a retail distributor, and caused at least $3,401.83 USD to be transferred from her bank account(s) to retail distributors as payment for defense articles and firearm parts.

38. In October, 2011, Defendant THANAKIT LE exported at least three (3) parcels from the United States to Thailand via the United States Postal Service, and caused at least $1,098.25 USD to be transferred to the United States Postal Service as payment for mail services.
39. On or about October 8, 2011, Defendant THANAKIT LE did cause at least $513.00 USD to be transferred to the United States Postal Service in furtherance of unlawfully exporting two (2) parcels containing defense articles and firearm parts, but mislabeled as "used motorcycle part" and "used auto part," from the United States to Thailand via the United States Postal Service.
40. On or about October 8, 2011, Defendant THANAKIT LE did attempt to unlawfully export two (2) parcels that contained defense articles and firearm parts, but mislabeled as "used motorcycle part" and "used auto part," from the United States to Thailand via the United States Postal Service.
41. On or about October 31, 2011, Defendant THANAKIT LE did cause at least $55.75 USD to be transferred to the United States Postal Service in furtherance of unlawfully exporting one (1) parcel containing firearm parts, but mislabeled as "wood handle" from the United States to Thailand via the United States Postal Service.
42. On or about October 31, 2011, Defendant THANAKIT LE did unlawfully export one (1) parcel that contained firearm parts but mislabeled as "wood handle" from the United States to Thailand via the United States Postal Service.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

On or about July 28, 2011, in the Houston Division of the Southern District of Texas, and elsewhere, defendants,

Chiranun THANAKIT LE,
a.k.a. Chiranun THANAKIT,
a.k.a. Sue LE,
a.k.a. Chiranun T. LE,
a.k.a. Sunun Hiransomboon,
and
Tul ROBROO,
a.k.a Tul ROBRHOO,

each aiding and abetting the other, did fraudulently and knowingly export, attempt to export and send from the United States to Thailand, any merchandise, article, and object, that is:

Three (3) Del-Ton, Inc., AR-15, 20" 1X9 Light Weight Barrels, P/N: BL1028

Two (2) DPMS - 18" .308 Bull Barrel Assemblies (Model 308-BA-18)
Three (3) DPMS - 16" .308 Tactical Barrel Assemblies (Model 308-BA-16)
Two (2) DPMS Panther Arms, 20" .223 Bull Barrels, Fluted, Stripped, P/N: BULL-01-FL
One (1) Yankee Hill Machine Co., Inc., 20" 1:7" Threaded, Fluted Barrel, Model #: YHM-77-TF
Six (6) 20 Round Steel Magazines for LR308 Rifles
One (1) MOE Grip - AR15/M16, Model: MAG415

contrary to the laws and regulations of the United States, to wit: Title 22, United States Code, Section 2778(b)(2) and Section 2778(c), and Title 22, Code of Federal Regulations, Sections 121.1, 123.1, 127.1, and 127.2, and did facilitate the transportation and concealment of said merchandise, article, and object, prior to exportation, knowing the same to be intended for exportation contrary to said laws and regulations of the United States.

In violation of Title 18, United States Code, Sections 554 and 2.

## COUNT THREE

On or about September 23, 2011, in the Houston Division of the Southern District of Texas, and elsewhere, defendant,

Chiranun THANAKIT LE,
a.k.a. Chiranun THANAKIT,
a.k.a. Sue LE,
a.k.a. Chiranun T. LE,
a.k.a. Sunun Hiransomboon,
and
Tul ROBROO,
a.k.a Tul ROBRHOO,

each aiding and abetting the other, did fraudulently and knowingly export, attempt to export and send from the United States to Thailand, any merchandise, article, and object, that is:

Twenty (20) Forged A4 Upper Receivers Stripped
Four (4) KRISS Super V MagEx G30+ Extended Glock 21 Magazines
One (1) RONI Pistol-Carbine Conversion Kit, P/N: RONI-G1
Seven (7) MOE Grips - AR15/M16, Model: MAG415
Ten (10) 80% AR-15 Lower Receivers
Ten (10) 25 Round Magazines for .22 Long Rifle
Fourteen (14) PMAG 30, 5.56 x 45 Magazines - AR15/M16, P/N: MAG211
One (1) PMAG 20LR, 7.62 x 51 Magazine - SR25/M110, Model: MAG243-BLK
One (1) 20 Round Steel Magazine for LR308 Rifles

Nine (9) Del-Ton, Inc., AR-15, 16" M4, Pre-Ban Barrels, P/N: BL-1010
Ten (10) Bulldog Barrels, 16" Barrels M4, 5.56 NATO, P/N: BAR165567M4VSBD
One (1) AR-15, 16" Mid-Length Pre-Ban Barrel, Model: BL1058
One (1) 16" Heavy Barrel 1 x 9" Twist, Model BL-11
Five (5) DMPS Panther Arms, 20" .223 Bull Barrels, Stripped, P/N: BULL-01
Five (5) 11.5" Pre-Ban Barrels, PN: BL1006

contrary to the laws and regulations of the United States, to wit: Title 22, United States Code, Section 2778(b)(2) and Section 2778(c), and Title 22, Code of Federal Regulations, Sections 121.1, 123.1, 127.1, and 127.2, and did facilitate the transportation and concealment of said merchandise, article, and object, prior to exportation, knowing the same to be intended for exportation contrary to said laws and regulations of the United States.

In violation of Title 18, United States Code, Sections 554 and 2.

## COUNT FOUR

On or about October 8, 2011, in the Houston Division of the Southern District of Texas, and elsewhere, defendant,

Chiranun THANAKIT LE,
a.k.a. Chiranun THANAKIT,
a.k.a. Sue LE,
a.k.a. Chiranun T. LE,
a.k.a. Sunun Hiransomboon,
and
Tul ROBROO,
a.k.a Tul ROBRHOO,

each aiding and abetting the other, did fraudulently and knowingly attempt to export, export and send from the United States to Thailand, any merchandise, article, and object, that is:

Six (6) M4 Barrel Assemblies with Upper Receivers and Bolt Carriers
Six (6) M16/AR-15 Bolt/Carrier Assemblies
Thirty (30) Carl Walther GmbH, M4/M16 30 Round Magazines, P/N 2245102
One (1) SureFire LLC, 60 Round, High Capacity Magazine, P/N: MAG5-60
Twelve (12) 20 Round Steel Magazine for LR308 Rifles

contrary to the laws and regulations of the United States, to wit: Title 22, United States Code, Section 2778(b)(2) and Section 2778(c), and Title 22, Code of Federal Regulations, Sections 121.1, 123.1, 127.1, and 127.2, and did facilitate the transportation and concealment of said

merchandise, article, and object, prior to exportation, knowing the same to be intended for exportation contrary to said laws and regulations of the United States.

In violation of Title 18, United States Code, Sections 554 and 2.

## COUNT FIVE

On or about July 28, 2011, in the Houston Division of the Southern District of Texas, and elsewhere, defendant,

Chiranun THANAKIT LE,
a.k.a. Chiranun THANAKIT,
a.k.a. Sue LE,
a.k.a. Chiranun T. LE,
a.k.a. Sunun Hiransomboon,
and
Tul ROBROO,
a.k.a Tul ROBRHOO,

each aiding and abetting the other, did knowingly and willfully export and attempt to export from the United States to Thailand a defense article, that is,

Three (3) Del-Ton, Inc., AR-15, 20" 1X9 Light Weight Barrels, P/N: BL1028
Two (2) DPMS - 18" .308 Bull Barrel Assemblies (Model 308-BA-18)
Three (3) DPMS - 16" .308 Tactical Barrel Assemblies (Model 308-BA-16)
Two (2) DPMS Panther Arms, 20" .223 Bull Barrels, Fluted, Stripped, P/N: BULL-01-FL
One (1) Yankee Hill Machine Co., Inc., 20" 1:7" Threaded, Fluted Barrel, Model #: YHM-77-TF
Six (6) 20 Round Steel Magazines for LR308 Rifles
One (1) MOE Grip - AR15/M16, Model: MAG415

which was designated as a defense article on the United States Munitions List, without first obtaining the required license and written approval from the Department of State Directorate of Defense Trade Controls.

In violation of Title 22, United States Code, Sections 2778(b)(2) and (c), Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1(a)(1), and Title 18, United States Code, Section 2.

## COUNT SIX

On or about September 23, 2011, in the Houston Division of the Southern District of Texas, and elsewhere, defendant,

Chiranun THANAKIT LE,
a.k.a. Chiranun THANAKIT,
a.k.a. Sue LE,
a.k.a. Chiranun T. LE,
a.k.a. Sunun Hiransomboon,
and
Tul ROBROO,
a.k.a Tul ROBRHOO,

each aiding and abetting the other, did knowingly and willfully export and attempt to export from the United States to Thailand a defense article, that is,

Twenty (20) Forged A4 Upper Receivers Stripped
Four (4) KRISS Super V MagEx G30+ Extended Glock 21 Magazines
One (1) RONI Pistol-Carbine Conversion Kit, P/N: RONI-G1
Seven (7) MOE Grips - AR15/M16, Model: MAG415
Ten (10) 80% AR-15 Lower Receivers
Ten (10) 25 Round Magazines for .22 Long Rifle
Fourteen (14) PMAG 30, 5.56 x 45 Magazines - AR15/M16, P/N: MAG211
One (1) PMAG 20LR, 7.62 x 51 Magazine - SR25/M110, Model: MAG243-BLK
One (1) 20 Round Steel Magazine for LR308 Rifles
Nine (9) Del-Ton, Inc., AR-15, 16" M4, Pre-Ban Barrels, P/N: BL-1010
Ten (10) Bulldog Barrels, 16" Barrels M4, 5.56 NATO, P/N: BAR165567M4VSBD
One (1) AR-15, 16" Mid-Length Pre-Ban Barrel, Model: BL1058
One (1) 16" Heavy Barrel 1 x 9" Twist, Model BL-11
Five (5) DMPS Panther Arms, 20" .223 Bull Barrels, Stripped, P/N: BULL-01
Five (5) 11.5" Pre-Ban Barrels, PN: BL1006

which was designated as a defense article on the United States Munitions List, without first obtaining the required license and written approval from the Department of State Directorate of Defense Trade Controls.

In violation of Title 22, United States Code, Sections 2778(b)(2) and (c), Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1(a)(1), and Title 18, United States Code, Section 2.

## COUNT SEVEN

On or about October 8, 2011, in the Houston Division of the Southern District of Texas, and elsewhere, defendant,

Chiranun THANAKIT LE,
a.k.a. Chiranun THANAKIT,
a.k.a. Sue LE,
a.k.a. Chiranun T. LE,
a.k.a. Sunun Hiransomboon,
and
Tul ROBROO,
a.k.a Tul ROBRHOO,

each aiding and abetting the other, did knowingly and willfully export and attempt to export from the United States to Thailand a defense article, that is,

Six (6) M4 Barrel Assemblies with Upper Receivers and Bolt Carriers
Six (6) M16/AR-15 Bolt/Carrier Assemblies
Thirty (30) Carl Walther GmbH, M4/M16 30 Round Magazines, P/N 2245102
One (1) SureFire LLC, 60 Round, High Capacity Magazine, P/N: MAG5-60
Twelve (12) 20 Round Steel Magazine for LR308 Rifles

which was designated as a defense article on the United States Munitions List, without first obtaining the required license and written approval from the Department of State Directorate of Defense Trade Controls.

In violation of Title 22, United States Code, Sections 2778(b)(2) and (c), Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1(a)(1), and Title 18, United States Code, Section 2.

## NOTICE OF FORFEITURE

Pursuant to Title 18, United States Code, Section 981(a)(1)(C); Title 22, United States Code, Section 401; Title 19, United States Code, Section 1595a(d); and Title 28, United States Code, Section 2461(c), defendants

Chiranun THANAKIT LE,
a.k.a. Chiranun THANAKIT,

a.k.a. Sue LE,
a.k.a. Chiranun T. LE,
a.k.a. Sunun Hiransomboon,
and
Tul ROBROO,
a.k.a Tul ROBRHOO,

are notified that in the event of conviction, the United States will seek to forfeit:

(1) all property, real or personal, which constitutes or is derived from proceeds traceable to such offense or offenses;

(2) all arms, munitions of war, or other articles that were intended to be, were being, or have been exported or removed from the United States in violation of law, or were subject to an attempt to export, ship from, or take out of the United States in violation of law;

(3) all vessels, vehicles, or aircraft which contained or were used in exporting or attempting to export arms, munitions of war, or other articles in violation of law;

(4) all merchandise exported or sent from the United States or attempted to be exported from the United States contrary to law, or the proceeds or value of such merchandise; and

(5) all property used to facilitate the exporting or sending or the attempted exporting or sending of merchandise from the United States contrary to law or the receipt, purchase, transportation, concealment, or sale of such merchandise prior to exportation.

The property subject to forfeiture includes, but is not limited to, the following:

1. At least $700,000 in U.S. currency
2. 2002 Mercedes Benz CLK430
3. Three (3) Del-Ton, Inc., AR-15, 20" 1X9 Light Weight Barrels, P/N: BL1028
4. Two (2) DPMS - 18" .308 Bull Barrel Assemblies (Model 308-BA-18)
5. Three (3) DPMS - 16" .308 Tactical Barrel Assemblies (Model 308-BA-16)

6. Two (2) DPMS Panther Arms, 20" .223 Bull Barrels, Fluted, Stripped, P/N: BULL-01-FL

7. One (1) Yankee Hill Machine Co., Inc., 20" 1:7" Threaded, Fluted Barrel, Model #: YHM-77-TF

8. Six (6) AR-15 Rifle Buffers

9. Six (6) AR-15 Buffer Tube Springs

10. One (1) AR-15 Pistol Length Buffer Tube

11. One (1) Magpul RVG Rail Vertical Grip

12. One (1) DPMS Barrel Wrench / Multi-Tool

13. One (1) UTG Tactical Carry Handle

14. One (1) Midwest Industries A-2 Sight Tool

15. Twenty (20) Forged A4 Upper Receivers Stripped

16. Four (4) KRISS Super V MagEx G30+ Extended Glock 21 Magazines

17. One (1) RONI Pistol-Carbine Conversion Kit, P/N: RONI-G1

18. Eight (8) MOE Grips - AR15/M16, Model: MAG415

19. Ten (10) 80% AR-15 Lower Receivers

20. Ten (10) 25 Round Magazines for .22 Long Rifle

21. Fourteen (14) PMAG 30, 5.56 x 45 Magazines - AR15/M16, P/N: MAG211

22. One (1) PMAG 20LR, 7.62 x 51 Magazine - SR25/M110, Model: MAG243-BLK

23. Nine (9) Del-Ton, Inc., AR-15, 16" M4, Pre-Ban Barrels, P/N: BL-1010

24. Ten (10) Bulldog Barrels, 16" Barrels M4, 5.56 NATO, P/N: BAR165567M4VSBD

25. One (1) AR-15, 16" Mid-Length Pre-Ban Barrel, Model: BL1058

26. One (1) 16" Heavy Barrel 1 x 9" Twist, Model BL-11

27. Five (5) DMPS Panther Arms, 20" .223 Bull Barrels, Stripped, P/N: BULL-01

28. Five (5) 11.5" Pre-Ban Barrels, PN: BL1006

29. Two (2) 10 Round Magazines for .22 Long Rifle

30. One (1) Harris BiPod Rail Adaptor

31. One (1) Bag Containing Miscellaneous Gun Parts & Accessories

32. Six (6) M4 Barrel Assemblies with Upper Receivers and Bolt Carriers

33. Six (6) M16/AR-15 Bolt/Carrier Assemblies

34. Thirty (30) Carl Walther GmbH, M4/M16 30 Round Magazines, P/N 2245102

35. One (1) SureFire LLC, 60 Round, High Capacity Magazine, P/N: MAG5-60

36. Nineteen (19) 20 Round Steel Magazines for LR308 Rifles

37. Fifty (50) AR-15 Replacement Rifle Grips

38. One (1) Tactical Red Dot Rifle Sight

39. Eighteen (18) Lower Receiver / Trigger Parts Kits

40. One (1) Discrete Weapons Carry Case

## MONEY JUDGMENT

Defendants are notified that in the event of conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, for which the defendants may be jointly and severally liable.

## SUBSTITUTE ASSETS

Defendants are notified that in the event that property subject to forfeiture, as a result of any act or omission of the defendants:

1) cannot be located upon the exercise of due diligence;

2) has been transferred or sold to, or deposited with, a third person;

3) has been placed beyond the jurisdiction of the Court;

4) has been substantially diminished in value; or

5) has been commingled with other property which cannot be divided without difficulty,

the United States will seek to forfeit any other property of the defendants up to the total value of the property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p), as incorporated by reference in Title 28, United States Code, Section 2461(c).

Original Signature on File

FOREPERSON OF THE GRAND JURY

Kenneth Magidson
United States Attorney

By: /s/ Ralph E. Imperato
Ralph E. Imperato
Assistant United States Attorney